1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
9                    AT TACOMA

10   RONALD GREGORY PETERS,

11                 Petitioner,                    Case No.  C06-5029 RBL/KLS

12            v.                                  REPORT AND
                                                  RECOMMENDATION
13   RICHARD MORGAN,
                                                  **NOTED FOR:**
14                 Respondent.                    **SEPTEMBER 22, 2006**

15

16        This habeas corpus action has been referred to United States Magistrate Judge Karen L.

17   Strombom pursuant to Title 28 U.S.C. § 636(b)(1) and Local MJR 3 and 4.  Petitioner filed this

18   action under 28 U.S.C. § 2254, challenging his 1996 conviction. (Dkt. # 9).   Respondent filed a

19   motion to dismiss in lieu of an answer, arguing that the petition is time barred.  (Dkt. # 14).  The

20   court agrees that the petition is time barred and recommends that the petition be **DISMISSED**

21   **WITH PREJUDICE**.

22

23                          **I.  BASIS FOR CUSTODY**

24

25        Petitioner is confined within the Washington State Department of Corrections (DOC) based

26   on the judgment and sentence of the Pierce County Superior Court.  Petitioner was convicted of one

27   count of Robbery in the First Degree.   (Dkt. # 14, Exh. 1).  Petitioner was sentenced to life in prison

28   without the possibility of parole as a third strike offender.  (Id. at 18-19,  21).

REPORT AND RECOMMENDATION
Page - 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.  STATEMENT OF THE CASE

### A.    Factual Summary of Crime

The Washington Court of Appeals summarized the facts of petitioner's crime as follows:

On September 5, 1995, the Lively Market was robbed at gun point. At approximately 12:00 a.m., Leslie Roberts was working behind the counter when a man wearing a ski mask and a long, hooded tweed jacket entered the store. The man was carrying a large gun, partially up his right sleeve and extending down the side of his leg. He ordered Roberts to fill two brown paper bags with money from the store safe. She replied that there was no cash, only rolled coins. She then placed the rolled coins into the bags. The man next directed her to take the cash from the till. Roberts emptied into the paper bags the contents of the till – cash, food stamps, coupons, and checks. The robber then told Roberts to go to the back of the store, where she called the police and reported the robbery.

Officer Donald Williams responded shortly after midnight. Roberts described the robber, and he broadcast the information to other police officers in the area. Sometime thereafter, Officer John Warczak observed a man he believed could be the robber enter a house at 5001 A Street. He also noticed a small red car parked in front of the house. Officer Warczak then drove to the Lively Market, where he discussed the robbery with Officer Williams and Robert, obtaining a more detailed description of the robber and his weapon.

After meeting with Officer Williams and Roberts, Officer Warczak returned to 5001 A Street. Officer Warczak and Sergeant Michael Miller, who arrived later, were able to see a sweater-type jacket, a sawed-off rifle that matched the description given by Roberts, some paper bags, and a knit cap inside the car. Warczak noted that the hood of the car was warm to the touch, indicating recent use.

The police approached 5001 A Street, where they met the homeowner, Ralph Holgerson, and his daughter, Christine Holgerson. Christine Holgerson told the officers that she owned the red 1986 Chevrolet Spectrum parked in front of the house; she consented to a full search of the car. The police recovered from the car: two brown paper bags containing cash, food coupons, and rolls of coins; a shotgun, which was inoperable; a hooded gray, white, and red pullover; and a knitted, blue-gray ski mask. The police then transported Roberts to the area where the car was located. She viewed the contents of the car and identified the paper bags, jacket, and gun located inside as the same items used in the robbery.  Ralph Holgerson consented to a search of their home. The police found Peters in the basement, hiding underneath the stairwell.

Officer Edward Wade gave Peters his Miranda warnings (*Miranda v. Arizona*, 348 U.S. 436 (1966)), and questioned him about the robbery. Peters

REPORT AND RECOMMENDATION
Page - 2

admitted robbing the Lively Market.

He told Officer Wade that: during the robbery he wore a gray ski mask and carried a broken-handled shotgun, which was inoperable; he did not threaten to kill the clerk but told her, "He just wanted the money"; he left the store with two bags of money, then drove the red-colored car to "Chris'" house, at 5001 A Street; and he robbed the store because he had not been working and he needed the money. Peters repeatedly told police that "Chris" was not involved in the robbery.

Within a month after the robbery, Officer Warczak was contacted about another robbery, involving a "Greg Peterson," who was staying at 5001 A Street Detective Michael Lynch had previously received information from the same informant through crime stoppers. Although the informant ultimately disclosed his name to police, he requested that his name remain confidential. The informant did not provide any specific information about the Lively Market robbery, but rather provided information that Greg Peterson was involved generally in robberies, including a possible robbery of a Subway sandwich shop in August 1995.

In October 1995, Peters' wife, Marie, met with Michael Read. Read told Marie that he was guilty of what Greg (Peters) was in jail for and that he was going to turn himself in. Marie's mother, Mary Wolford, was also present when Read made this statement. On October 20, 1995, in the presence of a notary public, Read signed a typed statement, admitting having robbed the Lively Market and promising to turn himself in on October 23, 1995. Shortly after signing the statement, however, Read left town. Despite issuance of a material witness warrant, Read was not available to testify at trial.

(Dkt. # 14, Exh. 8, at 237-239).

### B.    State Court Procedural History

On July 30, 1996, petitioner filed a notice of appeal of his superior court conviction. (Id. at Exh. 2).   On May 1, 1998, the Washington Court of Appeals affirmed petitioner's judgment and sentence. (Id. at Exh. 8).   On May 18, 1998, petitioner filed a petition for review.  (Id. at Exh. 9). That petition was denied on November 12, 1998.  (Id. at Exh. 10).   On November 23, 1998, the Washington Court of Appeals entered its mandate.  (Id. at Exh. 11).

On November 10, 1999, petitioner filed a personal restraint petition in the Washington Court of Appeals.  (Id. at Exh. 12).  On August 4, 2000, the Washington Court of Appeals dismissed the personal restraint petition.  (Id. at Exh. 14).  It does not appear that petitioner filed an appeal of this

REPORT AND RECOMMENDATION
Page - 3

1   dismissal to the Washington Supreme Court, as the certificate of finality was entered on October 4,

2   2000 by the Court of Appeals.  (Id. at Exh. 15).

3          On January 12, 2005, petitioner filed a second personal restraint petition, with the

4   Washington Supreme Court.  (Id. at Exh. 16).   On February 25, 2005, the Washington Supreme

5   Court Commissioner entered a ruling transferring the petition to the Washington Court of Appeals,

6   Division II.  (Id. at Exh. 18).   On June 28, 2005, the Washington Court of Appeals dismissed the

7   petition as time-barred, pursuant to RCW 10.73.090(1) and (3)(a).  (Id. at Exh. 19).

8          On July 25, 2005, petitioner filed a motion for discretionary review in the Washington

9   Supreme Court.   (Id. at Exh. 20).  On October 4, 2005, the Washington Supreme Court

10  Commissioner entered a ruling denying review.  (Id. at Exh. 21).  On October 21, 2005, petitioner

11  filed a motion to modify (Id. at Exh. 22), which was denied.  (Id. at Exh. 23).  On December 6,

12

13  2005, the Washington Court of Appeals entered a Certificate of Finality.  (Id. at Exh. 24).

14         Petitioner filed his federal habeas petition on April 12, 2006.  (Dkt. # 9).

15

16

17                                        **III.  ISSUE**

18    Petitioner raises the following ground for relief in his federal habeas petition:

19    Sentence was imposed without statutory authority in violation of petitioner's Fifth,
      Sixth & Fourteenth Amendment Rights.
20

21  (Dkt. # 9, p. 6).

22

23

24                        **IV.  EXHAUSTION OF STATE REMEDIES**

25         Because the petition is untimely under the statute of limitations, 28 U.S.C. § 2244(d), the

26  court need not determine whether petitioner properly exhausted his available state remedies.  28

27  U.S.C. § 2254(b)(2).

28

## V. EVIDENTIARY HEARING

A petitioner who fails to develop the factual basis of a claim in state court is not entitled to an evidentiary hearing unless the claim relies on:

> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense . . . .

28 U.S.C. § 2254(e)(2).

The decision to hold a hearing is committed to the court's discretion. Williams v. Woodford, 306 F.3d 665, 688 (9th Cir. 2002).  A hearing is not required unless the petitioner "alleges facts which, if proved, would entitle him to relief." Townsend v. Sain, 372 U.S. 293, 312 (1963). The petitioner must produce some evidence demonstrating the existence of a genuine question of material fact. Morris v. State of California, 966 F.2d 448, 454-55 (9th Cir. 1991), cert. denied, 506 U.S. 831 (1992). A hearing is not required if the claim presents a purely legal question or may be resolved by reference to the state court record. Campbell v. Wood, 18 F.2d 662, 679 (9th Cir.) (en banc), cert. denied, 511 U.S. 1119 (1994).  Because the petition in this case is untimely, petitioner cannot satisfy these standards, and he is not entitled to an evidentiary hearing.

## VI. STANDARD OF REVIEW

A federal petition for writ of *habeas corpus* filed on behalf of a person in custody pursuant to a judgment of a state court, shall not be granted with respect to any claim that was adjudicated on the  merits in State court proceedings unless the adjudication of the claim:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

REPORT AND RECOMMENDATION
Page - 5

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

State court judgments carry a presumption of finality and legality. <u>McKenzie v. McCormick</u>, 27 F.3d 1415, 1418 (9th Cir. 1994), cert. denied, 513 U.S. 1118 (1995).  Federal habeas corpus relief does not lie for errors of state law. <u>Estelle v. McGuire</u>, 502 U.S. 62, 67 (1991). The petitioner must prove the custody violates the Constitution, laws or treaties of the United States. <u>McKenzie</u>, 27 F.3d at 1418-19.  If a petitioner establishes a constitutional trial error, the Court must determine if the error caused actual prejudice. <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637-39 (1993).

# VII.  DISCUSSION

### A.   The Habeas Corpus Petition is Untimely Under The Federal Statute Of Limitations, 28 U.S.C. § 2244(d).

The Antiterrorism and Effective Death Penalty Act (AEDPA) established a statute of limitations for habeas corpus petitions. 28 U.S.C. § 2244(d).   For petitioners whose state court judgments became final prior to April 24, 1996, the one-year time period began running on the date the statute was signed into law and expired on April 23, 1997.  <u>Calderon v. United States Dist. Court for the Cent. Dist. of Cal. (Beeler</u>*)*, 128 F.3d 1283, 1287 (9th Cir. 1997), *cert. denied*, 522 U.S. 1099 (1998). The statute of limitations is subject to equitable tolling, but such tolling "will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time."  <u>Id</u>. at 1288 (citing <u>Alvarez-Machain v. United States</u>, 107 F.3d 696, 701 (9th Cir. 1996)).

Where the challenged conviction became final after April 24, 1996, the statute generally begins to run from one of the following four dates:

REPORT AND RECOMMENDATION
Page - 6

(A)     the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review;

(B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such state action;

( C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Direct review ordinarily concludes either upon the expiration of the time for filing a petition for writ of certiorari, or when the Supreme Court rules on a petition for writ of certiorari. Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999). A petitioner seeking review of a judgment of a lower state court must file the petition for writ of certiorari "within 90 days after entry of the order denying discretionary review." Sup. Ct. Rule 13(1). "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

The statute of limitations tolls only during the time a properly filed post-conviction, collateral challenge is pending in state court. 28 U.S.C. § 2244(d)(2); Nino v. Galaza, 183 F.3d 1003 (9th Cir. 1999). A state court petition rejected as untimely is not 'properly filed,' and is not entitled to statutory tolling under section 2244(d)(2). Pace v. DiGuglielmo, 544 U.S. 408, 125 S. Ct. 1807, 1814 (2005).

Petitioner's judgment and sentence was issued on July 30, 1996. (Dkt. # 14, Exh. 1). He filed a direct appeal on that same date, which was denied by the Washington Court of Appeals on May 1, 1998. (Id. at Exh. 2, Exh. 8). The Washington Supreme Court denied his petition for review

REPORT AND RECOMMENDATION
Page - 7

on November 12, 1998.  (Id. at Exh. 10).  Petitioner did not file a personal restraint petition after

that order was entered until nearly one year later, on November 10, 1999.  (Id. at Exh. 12).

Petitioner's first personal restraint petition properly tolled the federal statute of limitations until

August 4, 2000, when the petition was dismissed by the Washington Court of Appeals.  (Id. at Exh.

14).

Because petitioner did not file an appeal of the Washington Court of Appeals' order

dismissing his petition, the federal statute of limitations began running again once his personal

restraint petition was no longer pending and continued to run in an uninterrupted manner until

January 12, 2005, the date that petitioner filed his next personal restraint petition.  (*See* Id. at Exh.

16).  Approximately fifty-three (53) months elapsed between August 4, 2000, the date petitioner's

first personal restraint petition was dismissed, and January 12, 2005, the date petitioner filed his

second personal restraint petition.  (Id. at Exhs. 14 and 16).  Added to the nearly one year's time

which elapsed between the time petitioner filed his direct appeal and the filing of his first personal

restraint petition, it is clear that the federal statute of limitations had expired years before petitioner's

federal habeas petition was filed with this court, on April 12, 2006, the date he signed the petition.

In addition, because petitioner's last personal restraint petition was expressly found to be

time-barred by the Washington Court of Appeals, he receives no statutory tolling for the time that

petition was pending in the Washington State courts.  *See* Pace v. DiGiglielmo, 125 S. Ct at 1814.

### B.    Equitable Tolling Is Unavailable

Although the "AEDPA's statute of limitations is subject to equitable tolling," it is

"unavailable in most cases." Corjasso, 278 F.3d at 877 (citation omitted).  Equitable tolling "is

appropriate only 'if extraordinary circumstances beyond a prisoner's control make it impossible to

file a petition on time.'" Id. (citations omitted); Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir.

2001); Allen v. Lewis, 255 F.3d 798, 799-800 (9th Cir. 2001).  "External forces," not petitioner's

REPORT AND RECOMMENDATION
Page - 8

"lack of diligence" must account for his failure to file a timely petition.  Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999).   Ignorance of the law, "even for an incarcerated pro se petitioner, generally does not excuse prompt filing."  Marsh v. Soares, 223 F.3d 1217, 1220 (9th Cir. 2000).

There are no grounds for equitable tolling in this case.  There is no evidence of conduct by the State or by respondents which impeded petitioner's ability to file his federal petition in a timely manner.  There is no evidence of lack of clarity in the law or legal unavailability of claims preventing petitioner from filing his petition or some other extraordinary or unforseen impediment over which he had no control.

Petitioner urges that his petition should not be considered time-barred based on the U.S. Supreme Court's decision in Blakely v. Washington, 124 S. Ct. 2531 (2004).   Petitioner argues that with the advent of Blakely, a newly discovered legal basis for his claim of state and federal misapplication of the Sixth Amendment can only now be raised.  The Ninth Circuit, however, has expressly held that Blakely does not apply retroactively to cases which were final at the time or before Blakely was announced.  Schardt v. Payne, 414 F.3d 1025, 1038 (9th Cir. 2005); State v. Evans, 154 Wn.2d 438, 448, 114 P.3d 627.    Both the Ninth Circuit and the Washington Supreme Court have held that Blakely is not retroactive.  Only the United States Supreme Court can make new constitutional rules retroactively applicable.  *See* Tyler v. Cain, 533 U.S. 656, 662, 121 S. Ct. 2478, 2482, 150 L. Ed. 2d 632 (2001).    Petitioner's judgment and sentence became final on November 12, 1998.  (Dkt. # 14, Exh. 10).    Thus, the federal statute of limitations in petitioner's case had expired years before the Blakely decision was announced by the U.S. Supreme Court.

There are no extraordinary circumstances evident in this case requiring application of equitable tolling principles.  Therefore, the petition is barred and must be dismissed under 28 U.S.C. § 2244(d).

REPORT AND RECOMMENDATION
Page - 9

## VIII.  CONCLUSION

This petition is time barred.  Accordingly, the petition should be **DISMISSED WITH PREJUDICE.**  A proposed order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **September 22, 2006,** as noted in the caption.

Dated this 22nd  day of August, 2006.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION
Page - 10